

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JANET SIMMONS,

        Plaintiff,

v.

THE MAPLEWOOD GROUP, INC.,

        Defendant.

---

1:18-CV-0746 LJV (MJR)

REPORT AND
RECOMMENDATION

## INTRODUCTION

This case has been referred to the undersigned by the Honorable Lawrence J. Vilardo, pursuant to Section 636(b)(1) of Title 28 of the United States Code, for all pretrial matters and for hearing and reporting on dispositive motions for consideration by the District Court. (Dkt. No. 5) Before the Court is defendant's second motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 49) For the following reasons, it is recommended that defendant's motion for summary judgment be denied.

## BACKGROUND

Plaintiff Janet Simmons ("plaintiff" or "Simmons"), who originally filed her complaint in this matter in New York State Supreme Court, alleges that she suffered personal injuries as a result of a January 5, 2017 slip and fall on ice at a shopping plaza located at 4210 Union Road, Cheektowaga, New York. (Dkt. No. 1) Defendant The Maplewood Group, Inc. ("defendant" or "Maplewood") removed this matter to the Western District of

New York on July 5, 2018 on the basis of diversity jurisdiction. (*Id.*) A case management order was entered, discovery proceeded, and defendant filed a timely motion for summary judgment on February 28, 2020. (Dkt. Nos. 19, 22) Plaintiff then filed a motion seeking to substitute counsel and requesting an extension of time to respond to defendant's motion for summary judgment, which was granted. (Dkt. No. 24) Plaintiff thereafter requested, and was granted, two additional extensions of time to respond to defendant's motion. (Dkt. Nos. 27, 30) On June 18, 2020, plaintiff's counsel moved, for the first time, to extend the deadline for completion of expert discovery, which had expired months earlier, on January 31, 2020.[1] (Dkt. No. 33) Defense counsel opposed the motion, primarily on the grounds that because defendant had already filed a timely summary judgment motion without retaining a liability expert, defendant would suffer prejudice if the expert discovery deadline was extended at this late date.[2] (Dkt. No. 36) On August 24, 2020, the Court issued a Decision and Order granting plaintiff's motion for an extension of time to complete discovery on the condition that plaintiff's counsel was to pay the fees and costs incurred by defendant in bringing the first summary judgment motion.[3] (Dkt. No. 42) The Court also denied the pending summary judgment motion without prejudice, and indicated that defendant could renew the motion upon completion of expert discovery. (*Id.*)

---

[1] Specifically, plaintiff's counsel sought to retain the services of an expert meteorologist and to provide disclosures regarding plaintiff's medical treatment, including three surgical procedures resulting from the slip and fall. (Dkt. No. 33)

[2] Plaintiff's counsel responded that in order to cure any prejudice incurred by defendant and to allow plaintiff to fully present her case, his law firm was willing to pay the fees and costs incurred by defendant in filing the first summary judgment motion. (Dkt. No. 38, pgs. 8-9)

[3] The Court directed defense counsel to submit, to plaintiff's counsel, an affidavit setting forth the fees and costs associated with the summary judgment motion filed on February 28, 2020. (Dkt. Nos. 42, 43) This matter was held in abeyance until plaintiff remitted the fees and costs to defense counsel, at which time a new case management order was entered with deadlines for expert discovery and the filing of new dispositive motions. (Dkt. No. 46)

2

Following the additional period of expert discovery, defendant filed the instant second motion for summary judgment on April 30, 2021. (Dkt. No. 49) Plaintiff filed a response on June 8, 2021 and defendant filed a reply on June 22, 2021. (Dkt. Nos. 52 and 53) The Court heard oral argument on July 14, 2021. (Dkt. No. 54)

## STATEMENT OF FACTS

### *Plaintiff's Fall*

Janet Simmons arrived at the Airport Plaza parking lot, located at 4210 Union Road, Cheektowaga, New York, during the early afternoon of January 5, 2017, to shop at the cosmetics store "Hair Saga." (Dkt. No. 49-1, ¶¶1-2; Dkt. No. 52-4, ¶¶1-2)[4] Simmons parked her vehicle in an Airport Plaza parking spot located directly across from Hair Saga. (*Id.*) Upon exiting her vehicle, Simmons slipped and fell on the ground. (Dkt. No. 49-1, ¶¶3-4; Dkt. No. 52-4, ¶¶3-4) Specifically, she placed one foot on the ground outside of her car and was attempting to put her second foot on the ground when she felt herself begin to slip. (*Id.*) She tried to steady herself but was unable to do so and fell on the ground on her backside. (*Id.*) Simmons estimates that the fall occurred at approximately 1:52 p.m. (Dkt. No. 52-4, ¶1)

Simmons was initially unaware of what caused her to fall. (Dkt. No. 49-1, ¶5-¶8; Dkt. No. 52-4, ¶5-¶6) Upon falling, Simmons noted that the seat of her pants was wet and that she felt wetness underneath her. (Dkt. No. 49-1, ¶5-¶8; Dkt. No. 52-4, ¶5-¶6) Simmons testified that she was helped to her feet by her son and an unidentified bystander. (Dkt. No. 49-11, pgs. 37-38) After standing, she observed ice, as well as ice chips and flakes, on the ground in the area where she had fallen. (Dkt. No. 49-1, ¶6-¶8;

---

[4] The facts described herein are taken from the pleadings, motion papers, statements of undisputed facts and exhibits filed in this lawsuit.

3

Dkt. No. 52-4, ¶6; Dkt. No. 49-11, pgs. 89-90) Simmons concluded that she had slipped on ice and that the ice cracked from her fall, producing the flakes and chips. (Dkt. No. 49-1, ¶7; Dk. No. 52-4, ¶9) Simmons testified that when she first pulled into the parking spot, and before attempting to exit her vehicle, she did not see any ice or snow on the ground, nor did she observe any ice before her fall. (Dkt. No. 49-11, pgs. 20-21; Dkt. No. 49-1, ¶8; Dk. No. 52-4, ¶8)) Simmons also testified that she did not look at the ground before getting out of the car. (Dkt. No. 49-11, pg. 21-22)

Kani Simmons, plaintiff's son, and Esther Jones, plaintiff's mother-in-law, were present at the time of plaintiff's fall. (Dkt. No. 49-1, ¶12; Dkt. No. 52-4, ¶12) Mr. Simmons and Ms. Jones arrived at Hair Saga in the same vehicle as plaintiff and were still inside of the vehicle when the fall occurred. (Dkt. No. 52-4, ¶12) Mr. Simmons, who was seated in the rear passenger seat, testified that he observed his mother attempt to exit the car at which time she slipped, her hands went up in the air, and she yelled that she had fallen. (Dkt. No. 49-13, pgs. 6-8) Mr. Simmons testified that when he first exited the car to assist his mother, he did not initially observe ice because it was "black ice."[5] (*Id.* at 8) Mr. Simmons explained that when he walked around the car to assist his mother, the ground was slippery and there "was nothing but ice right where [plaintiff] fell at." (*Id.* at pgs. 6-9, 18; Dkt. No. 54-1, ¶12) He further observed "ice all over the parking lot." (Dkt. No. 49-13, pgs. 6-8) Mr. Simmons testified that he both saw and felt ice in the area where plaintiff fell, and he described the ice as a mixture of "shiny" and "black" ice. (Dkt. No. 49-13, pg. 29) Mr. Simmons recalled the weather on January 5, 2017 as cold but not actively

---

[5] Mr. Simmons stated that his understanding of the definition of black ice is "where you can't see it and it's slippery." (Dkt. No. 49-13, pg. 28)

4

snowing. (*Id.* at 11-12) He did not observe any salt on the ground in the Airport Plaza parking lot. (*Id.*) Mr. Simmons testified that there was "no doubt" in his mind that ice was present in the Airport Plaza parking lot on January 5, 2017; that he saw the ice; and that the ice caused his mother to slip and fall. (*Id.* at 18)

Esther Jones, plaintiff's mother-in-law, testified that she exited the vehicle after plaintiff and that she did not observe any ice on the ground before exiting the vehicle. (Dkt. No. 49-14, pgs. 5, 21) However, after stepping out of the car, Ms. Jones observed ice all over the Airport Plaza parking lot, including in the spot where plaintiff had fallen. (Dkt. No. 49-14, pgs. 14- 16; Dkt. No. 54-1, ¶12) Ms. Jones also noted that the ground was slippery. (Dkt. No. 49-14, pgs. 14-15) Specifically, Ms. Jones testified that after exiting the vehicle, she saw that "[i]t was ice, not only where [plaintiff] got out of her car at, but it was ice all over the place....[a]ll over the place it was ice." (*Id.* at pg. 16) Like Mr. Simmons, Ms. Jones testified that it was her belief that plaintiff slipped and fell on ice. (Dkt. No. 49-14, pg. 18)

After plaintiff fell, Ms. Jones informed the employees or proprietors of Hair Saga of the accident. (Dkt. No. 49-14, pg. 17) These individuals indicated that they rented the store and did not own the building or plaza. (*Id.*) They stated that they did not know the identity of their landlord or the owner of the Airport Plaza, and they did not offer any help or assistance. (*Id.*) After the fall occurred and after the exchange between plaintiff, her family, and the proprietors of Hair Saga, both Mr. Simmons and Ms. Jones observed the employees from Hair Saga apply salt throughout the parking lot, including in the area where plaintiff had fallen. (Dkt. No. 49-14, pg. 16; Dkt. No. 49-13, pgs. 19-20)

### *Maplewood's Snow and Ice Removal*

Maplewood, a real estate holding company, owned the Airport Plaza on January 5, 2017, the date of plaintiff's fall. (Dkt. No. 49-1, ¶15) Hair Saga was one of several commercial tenants on the premises. (*Id.*) At that time, Maplewood was responsible for snow and ice removal in the Airport Plaza parking lot and retained Rath's Outdoor Services to perform snowplowing and salting. (*Id.* at ¶15) Robert Dweck, president of Maplewood, testified that, according to the contract between Rath's Outdoor Services and defendant, Rath's would perform snow and ice removal at the Airport Plaza parking lot when snow accumulated in excess of two inches. (Dkt. No. 49-12, pg. 31) However, Dweck was unaware as to when, or under what conditions, Rath's would salt the parking lot in addition to performing snow and ice removal. (*Id.* at pgs. 38-39) Dweck also was unaware as to whether Rath's salted or snowplowed the Airport Plaza parking lot on January 5, 2017. (*Id.* at 40; Dkt. No. 52-4, ¶15)

Neither Dweck nor Maplewood received any complaints about Rath's snowplowing or salting services. (Dkt. No. 49-1, ¶18) Maplewood was not aware of any other slip and falls in the Airport Plaza parking lot and was not aware of Simmons' fall until it was served with the instant lawsuit. (Dkt. No. 49-1, ¶19)

### *Video Surveillance*

Defendant obtained video surveillance footage from the date and time of the slip and fall from another tenant of the Airport Plaza. (Dkt. No. 49-1, ¶20; Dkt. No. 49-9) The surveillance video shows Simmons' vehicle parked in the Airport Plaza parking lot. (*Id.*) The top portion of the vehicle's driver-side front door is visible on the video. (*Id.*) However, the bottom portion of the door as well as the ground directly next to and underneath the

door is obstructed from view by another parked car. (*Id.*) On the video, plaintiff can be seen starting to exit her vehicle from the driver's seat. (*Id.*) She then appears to fall and drops from view of the camera. (*Id.*) Because of the location of the other vehicle, the remainder of plaintiff's fall to the ground as well as the area where she lands are not visible on the video. (*Id.*) However, the video shows a light dusting of snow as well as what appears to be ice in other areas of the Airport Plaza parking lot, including in a parking spot nearby the location of plaintiff's vehicle. (*Id.*)

### Meteorologist Expert Opinion

Plaintiff submits an affidavit and expert report from Meteorologist Aaron Mentkowski as to the weather conditions before and during the early afternoon of January 5, 2017 at 4210 Union Road, Cheektowaga, New York.[6] (Dkt. Nos. 52-1, 52-3) In conducting his review and analysis of the meteorological conditions leading up to and existing at the time of plaintiff's fall, Mentkowski reviewed weather data from the National Climatic Data Center and the National Weather Service spanning from January 3, 2017 through January 5, 2017. (Dkt. No. 52-1, ¶7) He also reviewed the surveillance footage of plaintiff's fall. (*Id.*) Mentkowski studied weather conditions at the Buffalo Niagara International Airport, which is located approximately 1.5 miles east of the Airport Plaza parking lot. (*Id.* at ¶9) In his report, Mentkowski notes that at 11:54 a.m. on the morning of January 4, 2017, the temperature dropped to 31 degrees Fahrenheit. (*Id.*) Mentkowski explains that, at that point, moisture on the ground would begin to freeze and create icy conditions. (*Id.*) The report goes on to note that the temperature stayed below freezing

---

[6] Mentkowski has a Bachelor of Science degree in Meteorology from the State University of New York at Oswego, is a Certified Broadcast Meteorologist, and a recipient of the AMS Seal of Approval from the American Meteorological Society. (Dkt. No. 53-3, ¶¶3-5)

7

through 1:52 p.m. on January 5, 2017, the approximate time of Simmons' fall. (*Id.*) Specifically, Mentkowski reports that at 1:52 p.m. on January 5, 2017 in Cheektowaga, New York, "the temperature was 20 degrees Fahrenheit, winds were westerly at nine miles per hour, and light snow was falling." (Dkt. No. 52-3, pg. 13)

Based upon his training and the data he reviewed from the relevant date and times, Mentkowski opined "to a reasonable degree of meteorological certainty that any ice present on the ground in the area where [p]laintiff fell would have formed approximately 24 hours prior to the incident in question." (Dkt. No. 52-1, at ¶10; Dkt. No. 49-1, pg. 12) During his deposition, Mentkowski testified that when reviewing the surveillance video, he observed what appeared to be ice in the parking spot located approximately six to eight feet from where plaintiff fell. (Dkt. No. 49-17, pgs. 8, 22)

## DISCUSSION

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991); *see also Matsushia Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (summary judgment is appropriate when "the record as a

whole could not lead a rational trier of fact to find for the non-moving party"). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2007) (an issue of fact is considered "material" if it "might affect the outcome of the suit under the governing law").

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).

<u>Negligence and Defendant's Duty of Care</u>

The instant case, which is grounded in negligence, is before the Court based on diversity jurisdiction. (Dkt. No. 1) Accordingly, the Court is to apply the substantive law of New York. *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). To prevail on a negligence claim in New York, a plaintiff must prove that: (1) defendant owed her a duty of care; (2) defendant breached that duty; and (3) plaintiff was injured because of the breach. *Holland v. United States*, 918 F. Supp. 87, 89-90 (SDNY 1996); *see also Japan Airline Co., Ltd. v. Port Authority of New York and New Jersey*, 178 F.3d 103 (2d Cir. 1999). Despite the availability of summary judgment for negligence claims, "it is very hard to show that there are no questions of material fact in negligence cases." *Bryndle v. Blvd. Towers, II, LLC*, 132 F. Supp. 3d 486, (WDNY 2015); *quoting Cartin v. United States*, 853

9

F. Supp. 63, 65 (NDNY 1994) ("The very question of whether the defendant's conduct amounts to 'negligence' is inherently a question for the fact-trier in all but the most egregious instances.").

Maplewood, owner of the Airport Plaza, had a duty to maintain its property, including the Airport Plaza parking lot, in a reasonably safe condition in view of all the circumstances. *Basso v. Miller*, 40 N.Y.2d 233 (1976). To establish that defendant Maplewood breached the duty to maintain its property in a reasonable and safe manner on January 5, 2017, plaintiff Simmons must prove: "(1) that a dangerous condition existed; and (2) that defendant either created the dangerous condition or that it had actual or constructive notice of its existence." *Feigles v. Costal Lumber Co.*, 32 F. Supp. 2d 109 (WDNY 1998); *accord Dapp v. Larson*, 240 A.D.2d 918, 919 (3d Dep't 1997). For the reasons outlined below, Simmons has raised genuine, material issues of fact as to whether Maplewood had constructive notice of a dangerous condition in the Airport Plaza parking on January 5, 2017, and therefore summary judgment is not appropriate here.

### Existence of a Dangerous Condition

To begin, Simmons has submitted evidence that a dangerous condition, namely ice, existed in the Airport Plaza parking lot at the time of her fall on January 5, 2017. Plaintiff testified that immediately upon falling, she noticed that her pants were wet and she felt wetness underneath her. After standing, she observed ice, as well as ice chips and flakes, on the ground where she had fallen. Likewise, both Mr. Simmons and Ms. Jones testified that, after exiting the vehicle, they saw ice "all over" the Airport Plaza parking lot, including in the area where plaintiff fell. In addition, plaintiff, Mr. Simmons, and Ms. Jones all testified that ice was present in the parking spot and that it caused

plaintiff's fall. The surveillance video of the Airport Plaza parking lot at the time of plaintiff's fall shows what appears to be ice in a parking spot nearby plaintiff's vehicle. While the specific area where plaintiff fell is not visible on camera, the video corroborates the witnesses' testimony that the general condition of the parking lot on January 5, 2017 was icey. Lastly, Meteorologist Mentkowski's expert report reflects that the temperature and weather conditions during the time period leading up to accident would have caused any moisture on the ground to freeze and create icy conditions.

The Court rejects defendant's contention that because Simmons and the two witnesses testified that they did not observe ice on the ground *before* the fall, plaintiff has not produced any "objective, non-conclusory" evidence that she slipped on ice or that ice was present in the area where she fell. In *Wood v. Buffalo & Fort Erie Pub. Bridge Auth.*, the Fourth Department rejected a similar argument made by a defendant in a slip and fall case, specifically that it was entitled to summary judgment because plaintiff's contention that he fell on ice was speculative. 178 A.D.3d 1383 (4th Dept. 2019). Instead, the Court found it sufficient that plaintiff testified that the night was cold and that he observed that the blacktop was "glossy" and "shiny." *Id*. The *Wood* Court further noted that "the fact that plaintiff did not observe ice does not establish that [his] fall was not caused by ice." *Id*. 1383. *See also Smith v. United Ref. Co. of Pa.*, 148 A.D.3d 1733 (4th Dept. 2017).

Here, the witness testimony, surveillance video, and expert meteorological report submitted by plaintiff are sufficient to raise a triable issue of fact as to whether ice existed in the Airport Plaza parking lot during the afternoon of January 5, 2017, thereby creating a dangerous condition which resulted in plaintiff's slip and fall upon exiting her car. While defendant may dispute the strength of this evidence, it is the province of the jury, and not

11

the Court, to assess witness credibility, determine the weight of the evidence, and to draw appropriate inferences. Thus, a genuine dispute of fact exists as to the existence of a dangerous condition.

### Maplewood's Constructive Notice

Having found that plaintiff has raised a material issue of fact as to the existence of a dangerous condition, the Court now turns to the notice requirement. The New York Court of Appeals has explained that absent evidence that defendant created the dangerous condition or had actual notice of it, a plaintiff must prove that defendant had constructive notice of the condition. *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836 (1986).[7] To prove constructive notice, the evidence must establish that "the dangerous condition was visible and apparent, and [that] it existed for a sufficient length of time prior to that accident to permit the defendant to discover the condition and remedy it." *Camelio v. Wal-Mart Stores*, 15 F. Supp. 2d 268 (WDNY April 30, 1998); *Gordon*, 67 N.Y.2d 837-38. Constructive notice can be proven through circumstantial evidence, such as "the circumstances surrounding the injury and the condition of the premises." *Touri v. Zhagui*, 06 Civ. 00776, 2010 U.S. Dist. LEXIS 20112 (SDNY Mar. 5, 2010) Thus, evidence from which a jury could reasonably infer that the condition was visible and apparent and had been there for enough time for the defendant to reasonably discover it is sufficient to overcome summary judgment. *Negri v. Stop & Shop, Inc.*, 65 N.Y.2d 625, 626 (1985).

---

[7] Here, the parties agree that there is no evidence in the record that Maplewood created the hazardous condition which caused plaintiff's fall or that Maplewood had actual notice of the hazardous condition. *See Buskey v. Boston Mkt. Corp.*, 04 CV 2193, 2006 U.S. Dist. LEXIS 65756 (EDNY Aug. 17, 2006) (plaintiff failed to establish element of actual notice where record showed that neither plaintiff nor anybody else reported the slippery condition on which plaintiff fell to defendant). Thus, the success of plaintiff's claim is contingent on her ability to prove that defendant had constructive notice of the dangerous or icy condition of the parking lot.

Plaintiff testified that when she stood up from her fall, she observed ice on the ground underneath her. Likewise, Mr. Simmons and Ms. Jones testified that they observed ice throughout the Airport Plaza parking lot, including in the immediate area where plaintiff fell when exiting the car. Indeed, both witnesses clearly testified that they saw ice where plaintiff had fallen.[8] Further, the surveillance video shows what appears to be ice in other areas of the parking lot, including in a parking spot near the location of plaintiff's fall. Indeed, the testimony of the witnesses, as well as the reasonable inferences which may be drawn from the video surveillance, all raise genuine, material issues of fact as to whether the ice was apparent and visible. *See Sodhi v. Dollar Tree Stores, Inc.*, 175 A.D.3d 914 (4th Dept. 2019) (plaintiff's deposition testimony that she observed "ice all around [her]" after she fell, presented a question of fact as to whether the icy condition was visible and apparent.); *Conklin v. Ulm*, 41 A.D.3d 1290, 1291-91 (4th Dept. 2007) (plaintiff raised triable issue of fact as to defendant's constructive notice of ice where plaintiff testified that while he was on the ground after his fall, he noticed that the surface of the area where he fell was icy.)

Defendant argues that because it is undisputed that neither plaintiff nor the two witnesses observed the ice *prior* to plaintiff's fall, the Court must find, as a matter of law, that the ice was not visible and apparent. The Court disagrees. While the witnesses indeed testified that they did not see the ice until *after* the accident, this testimony does not prove, as a matter of law, that ice was not *generally* visible or apparent in the area

---

[8] Defendant attempts to dismiss the testimony offered by plaintiff regarding the appearance of the ice as "self-serving statements" by "plaintiff and her family members." "[T]he mere fact that a non-movant's factual allegations in opposition are 'self-serving' does not automatically render them insufficient to defeat summary judgment." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Moreover, credibility determinations, the weight to be afforded evidence, and the drawing of inferences from facts, are in the province of the jury, as opposed to the court, in a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

13

where plaintiff fell. Plaintiff testified that she fell while stepping out of her car immediately upon arrival to the shopping plaza, and that she did not look at the ground before exiting her vehicle. Mr. Simmons testified that he did not see the ice when he first exited the car on the *passenger* side, but that as he proceeded to walk around the car to assist his mother, he observed icy conditions throughout the parking lot as well as ice in the area where his mother fell. Ms. Jones testified that she did not notice ice when the vehicle first parked and she remained inside, but that after exiting the vehicle, she saw ice all over the parking lot including where plaintiff had fallen. Drawing all reasonable inferences in favor of the non-moving party, as the Court is obligated to do here, it is not unreasonable or illogical to conclude, based on this testimony, that the witnesses would not have had an opportunity to notice or appreciate the ice before the accident occurred, even if the ice was visible and apparent on the ground.[9] *See Haskin v. United States*, 10-CV-5089, 2015 U.S. Dist. LEXIS 84726 (EDNY June 30, 2015) ("[T]he fact that [plaintiff] did not see any ice prior to the point at which he slipped does not definitively establish [defendant's] lack of notice, nor does it establish that the ice was not visible and apparent as a matter of law."). In fact, taking defendant's argument to its conclusion, plaintiff here would have to prove that she first saw the ice and then walked or traversed over it regardless of the danger, and, in so doing, would be either limited or barred from recovery based on

---

[9] Defendant cites *Tedesco v. Norfolk Southern Corp.*, 00-CV-0172, 2002 U.S. Dist. LEXIS 13836 (WDNY June 6, 2002) in support of its argument that failure to view a hazardous condition before an accident proves that the condition was not visible and apparent. However, *Tedesco* is distinguishable from the facts here. In *Tedesco*, a plaintiff who slipped on ice testified that he did not see the ice during his earlier *safety inspection* of the premises. The Court found that this testimony demonstrated lack of visibility as to the ice and no constructive notice to defendant. Here, plaintiff is not an employee charged with a safety inspection of the parking lot. Instead, she is a customer who slipped and fell immediately upon arriving at the premises and stepping out of her vehicle. Likewise, the testimony of the witnesses indicates that they were still in the car or in the process of exiting the car when the fall occurred, and therefore also may not have had the opportunity to view the hazard before the accident.

comparative negligence. *See Pelow v. Tr-Main Development*, 303 A.D.2d 940 (4th Dept. 2003) ("Whether a condition was regularly observable impacts on plaintiff's comparative negligence.") The Court finds such a scenario to be illogical and inconsistent with the intent of the law governing negligence.

Likewise, the Court rejects defendant's argument that Mr. Simmons' description of some of the ice as "black ice" proves, as a matter of law, that the ice was not visible or apparent. "[T]he mere fact that plaintiff may have fallen on black ice does not, as a matter of law, establish that the condition was not visible and apparent." *See Wood*, 178 A.D.3d at 1384. *See also Fuller v. Armor Volunteer Fire Co., Inc.*, 169 A.D.3d 1471 (4th Dept. 2019) (denying summary judgment where plaintiff slipped and fell on black ice because genuine issue of fact existed as to whether ice was visible and apparent); *Feeney v. Benderson Dev. Co.*, 255 A.D.2d 965 (4th Dept. 1998) (summary judgment on slip and fall claim denied where plaintiff raised triable issue of fact as to notice of dangerous condition by submitting affidavit from witness to plaintiff's accident who, while assisting plaintiff, noticed black ice in the parking lot where plaintiff fell). As noted above, Mr. Simmons described the ice as a combination of "shiny" and "black." Mr. Simmons, as well as plaintiff and Ms. Jones, all clearly testified that they observed ice in the area of the fall. Defendant may certainly argue to the jury that Mr. Simmons' description of the ice as well as the witnesses' failure to see the ice before the accident shows that the ice was not visible and apparent. However, this dispute cannot be resolved on summary judgment. In other words, the appearance and visibility of the ice are issues of fact for the jury.

In addition to raising a triable issue of fact as to whether the ice was apparent and visible, plaintiff has also put forth evidence to raise a genuine, material issue of fact as to

15

whether the ice existed for a sufficient length of time prior to the accident to permit defendant to discover the danger and to remedy it. Specifically, plaintiff submits an expert opinion from Meteorologist Mentkowski that, based on his study of the weather conditions and temperature during the period leading up to the afternoon of January 5, 2017, any ice present on the ground in the area where the plaintiff fell would have formed approximately 24-hours prior to the accident. *See Waters v. Ciminelli Dev. Co., Inc.*, 147 A.D.3d 1396 (4th Dept. 2017) (denying summary judgment and finding that defendants did not establish lack of constructive notice of the ice that caused plaintiff's fall where plaintiff submitted, *inter alia*, an opinion from an expert meteorologist that the ice formed up to three hours prior to plaintiff's fall); *Occhino v. Citigroup, Inc.*, CV-03-5259, 2005 U.S. Dist. LEXIS 28899 (EDNY August 26, 2005) ("[T]he deposition testimony of plaintiff's expert and the supporting meteorological evidence, which indicate that ice formed at least twelve hours prior to the accident, are sufficient to create an issue of material fact as to whether [defendant] had constructive notice of the condition.").

Defendant does not submit any evidence, expert or otherwise, to dispute Mentkowski's conclusions. Instead, defendant contends that Mentkowski's opinion as to when the ice formed is purely "speculative." Here again, defendant's arguments relate to the weight of plaintiff's evidence and cannot be resolved at the summary judgment stage. It is sufficient that plaintiff has raised a material issue of fact as to the length of time the ice was present. *See Bryndle*, 132 F. Supp. 3d at 499-501 (defendant's contentions that the ice could have formed "moments before plaintiff's fall" were arguments to be made to a jury and could not be determined on summary judgment).

Plaintiff has put forth evidence, sufficient to withstand judgment as a matter of law, that the ice was visible and apparent and existed for an appreciable length of time to allow defendant to discover it and remedy the hazard. Thus, a genuine issue of fact exists as to whether Maplewood had constructive notice of a dangerous or hazardous condition in the Airport Plaza parking lot on January 5, 2017 which caused Simmons to slip and fall, and summary judgment should not be granted.

## CONCLUSION

For the foregoing reasons, the Court recommends that defendant's motion for summary judgment be denied. (Dkt. No. 49)

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

DATED:     November 4, 2021
           Buffalo, New York

*[signature]*
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge